IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

COURTNEY PRICE,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        Civil Action No. 1:19-cv-1200 (RDA/IDD)
                                   )
CITY OF ALEXANDRIA,                )
                                   )
        Defendant.                 )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Rule 56 Motion for Summary Judgment brought by Defendant City of Alexandria ("City") in this Title VII employment discrimination case. Dkt. 45. The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Loc. Civ. R. 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the City's Motion for Summary Judgment (Dkt. 45), the City's Memorandum in Support (Dkt. 46), Plaintiff's Brief in Opposition (Dkt. 51), the City's Reply (Dkt. 57), it is hereby ORDERED that the City's Motion for Summary Judgment is GRANTED in part and DENIED in part. For the reasons that follow, judgment will be entered against Plaintiff on his hostile work environment claim because he has failed to establish a genuine issue of material fact. This matter will proceed to trial on Plaintiff's retaliation claim.

### I. BACKGROUND

Although the parties dispute certain facts, the following facts are undisputed and are considered in the light most favorable to Plaintiff except where noted. *See* Stipulation of Uncontested Facts (Dkt. 66); Defendant's Statement of Undisputed Material Facts (Dkt. 46, 2-12); Plaintiff's Statement of Additional Material Facts and Dispute of Defendant's Material Facts (Dkt.

51, 2-20); Defendant's Specific Responses to Plaintiff's Opposition (Dkt. 57-1); Defendant's Responses to Plaintiff's Additional Facts (Dkt. 57-2). Courtney Price, the Plaintiff in this case, is a male who was once employed by the City of Alexandria in its Transportation and Environmental Services Department. Dkt. 46, 1. Plaintiff learned of a job opening with the City from his girlfriend, Jennifer Bell ("Bell"), who also worked for the City of Alexandria and served as the human resources liaison for the Transportation and Environmental Services division. *Id.*

Plaintiff began working for Defendant in September 2018, and his employment was ultimately terminated by the City of Alexandria in January 2019. Dkt. 51, 1, 3. Bell worked under Yon Lambert, a City employee who also oversaw Heather Diez. Diez worked as Deputy Director of Development and Right of Way Services and supervised Plaintiff. Diez and Lambert were unaware that Plaintiff was romantically involved with Bell, another City employee. Neither Plaintiff nor Bell told these supervisors of their dating relationship when Plaintiff was hired. Dkt. Nos. 46, 3; 57-1, 1. Together, Lambert and Diez interviewed various candidates for a department engineering position and hired Plaintiff after obtaining authorization from the Human Resources department despite Plaintiff's lack of a college degree—a typical requirement. Dkt. 46, 3. Plaintiff was ultimately hired for the job of Permits Manager, albeit on a probationary basis, and he worked under Diez and Lambert in this role. In his job, Plaintiff was responsible for processing right-of-way-permits and overseeing employees who supported the permits center. *Id.* at 2.

Shortly after he started his job with the City of Alexandria, Plaintiff met his supervisor, Heather Diez. Communication between Plaintiff and Diez was frequent. Plaintiff states that Diez contacted him on a daily basis and sometimes communicated with him after hours on his work-issued cell phone, a point the City contests. Dkt Nos. 51, 7; 57-2, 15. Diez allegedly told Plaintiff that she could break up happy homes because she had a "mean sex game, blond hair, and blue

eyes" and referred to her own breasts as "baking bread," *see* Dkt. 51, 4, which the City disputes. *See* Dkt. 57, 3 n.5.  Plaintiff maintains, but the City contests, that Diez also engaged in behavior that included: telling Plaintiff that she could seduce another city employee by "showing off her bust with low-cut shirts and giving him "the look"; showing Plaintiff a photo of her former supervisor and, among other things, bragging to Plaintiff that this former supervisor wanted to leave his wife for Diez but could not afford it; touching Plaintiff without his consent, specifically his shoulders, back, and arms on a near-daily basis; and at least once per week, brushing up against Plaintiff with her chest.  *See* Dkt. 51, 4-5, 8.  Diez also directed Plaintiff to add the time that they talked on the phone after work hours to his timesheets.  *See id.* at 7; Dkt. 57-2, 16.

Plaintiff asserts that he did not reciprocate this behavior.  Dkt. 51, 11.  On November 25, 2018, Diez emailed Plaintiff and told him he was "doing great!" while acknowledging that he was working on his "dedicated focus."  Dkt. 51-36.  Then, on November 27, 2018, Plaintiff text messaged Diez that he would "email her his time" as he could not access the payroll system while he was on vacation.  Dkt. Nos. 51-31; 57-2, 19-20.  Diez replied "I'll approve all" and instructed Plaintiff to ask Danyell Jones or someone else to "get in touch" with her.  *Id.*  The next day, Plaintiff sent a message to Jones, his subordinate, with information about his hours.  Dkt. 51-32.

While Plaintiff was on vacation, Diez learned that Plaintiff and Bell were in a relationship. *Id.*  When he returned to the office, Plaintiff maintains that Diez began "micromanaging" his workload and that she imposed new requirements on Plaintiff and limited his hours, Dkt. 51, 12, which the City contests.  *See* Dkt. 57-2, 27.  Plaintiff maintains that he complied with these newly imposed requirements.  Dkt. 51, 12. On December 14, 2018, Bell spoke with Lambert about Diez's workplace behavior, Dkt. 57-2, 27, though it is not uncontested that she specifically addressed

Diez's actions toward Plaintiff. *See id.* The City also has a policy that prohibits sexual harassment and requires reporting of sexual harassment claims. Dkt. Nos. 46, 11-12; 51, 16-17.

On January 3, 2019, Diez and Lambert met with Plaintiff. Dkt. 51, 15. At that meeting, Plaintiff received a letter that recommended his termination. *Id.* The grounds cited for Plaintiff's termination included his improper use of the official parking placard on his personal vehicle and for fraudulently submitting his time while away on vacation. *See* Dkt. 57, 19.

Next, on January 9, 2019, Plaintiff met with City human resource officers Steve Mason ("Mason") and Barbara DiRenzo ("DiRenzo") to explain that Diez had sexually harassed him since he began working for the City of Alexandria and that her reasons supporting her recommendation for termination were false. *Id.* Mason reportedly then said that he would handle the situation. *Id.* The City disputes that Plaintiff described his experience as harassment or made any allegations other than describing Diez's behavior after she learned of his relationship with Bell as "weird." *See* Dkt. 46, 10, 26, 30.

Finally, on January 23, 2019, Plaintiff received a letter from human resources indicating that his department's recommendation for termination was upheld, and that his termination would be effective January 25, 2019. Dkt. 51-41.

On May 9, 2019, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation and discrimination on the basis of race and sex. Dkt. 25-1. On June 19, 2019, the EEOC issued Plaintiff a Notice of Right to Sue letter. Dkt. 25-2. On September 17, 2019, Plaintiff filed a Complaint in this Court on September 17, 2019, asserting several claims under Title VII and 42 U.S.C. § 1983: sexual harassment, hostile work environment, and retaliation. Dkt. 1. Plaintiff later voluntarily dismissed his section 1983 claims. Dkt. 10. On December 19, 2019, Defendant filed a partial motion to dismiss, Dkt. 12,

which the Court granted on January 29, 2020.  Dkt. 21.  The Court authorized Plaintiff to file an amended complaint, which he did on February 12, 2020.  Dkt. 24.  In his amended complaint, Plaintiff brought claims under Title VII for (1) sex discrimination and unlawful termination, (2) hostile work environment, and (3) retaliation.  Defendant moved to dismiss the sex discrimination and unlawful termination count, as well as the hostile work environment count, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  The Court granted Defendant's motion to dismiss the sex discrimination and unlawful termination claim, but denied Defendant's motion as to the hostile work environment claim.  Dkt. 43.

On December 21, 2020, Defendant filed the instant motion for summary judgment.  Dkt. 45.  Defendant argues it is entitled to summary judgment on Plaintiff's hostile work environment claim because the unwelcome conduct Plaintiff endured (1) was not sufficiently severe or pervasive, (2) Plaintiff cannot establish he subjectively believed he was being harassed, (3) Plaintiff's work performance was never affected, (4) the alleged conduct was not based on Plaintiff's gender, and (5) the *Faragher-Ellerth* defense bars Plaintiff's claim.  Dkt. Nos. 46; 57.  Defendant also contends that it is entitled to judgment on Plaintiff's retaliation claim because (1) Plaintiff did not engage in protected activity and (2) there is no causal connection between his protected activity and his termination.  *Id.*  Plaintiff opposes Defendant's motion, arguing (1) the conduct Plaintiff endured was severe and pervasive, (2) the harassing conduct is attributable to the City, and (3) Plaintiff's termination was an adverse action that occurred after he engaged in protected activity and is therefore actionable as a retaliation-based claim under Title VII.  Dkt. 51.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)).

"A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Id.* at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a Court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiff is the non-moving party and all reasonable inferences are accordingly drawn in his favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). This is a "fundamental principle" that guides a Court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson*, 477 U.S. at 247-28.  And a "material fact" is one that might affect the outcome of a party's case.  *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).  The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001).  A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  And this Court requires that the non-moving party list "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."  Loc. Civ. R. 56(B).

## III.   ANALYSIS

Given the factual record on summary judgment, the Court must determine whether summary judgment is appropriate as to either of Plaintiff's claims or whether genuine issues of material fact exist as to one or both of Plaintiff's claims.  As Plaintiff seeks to establish proof through the pretext "avenue" rather than "by presenting direct or circumstantial evidence" in support of his Title VII claims, *see Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318

(4th Cir. 2005), the Court analyzes Plaintiff's claims under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

First, the Court notes that Plaintiff disputes certain facts by citing his own Statement of Additional Facts without explaining how those statements "support the facts alleged to be in dispute." Loc. Civ. R. 56(B). For example, Plaintiff disputes Defendant's Fact #6 by merely stating "*Disputed. See PAF A, B*" without further elaboration. *See* Dkt. 51, 18. And because this Court "is not required to sift through the record searching for evidence to support opposition to summary judgment," *Crawford v. Newport News Indus. Corp.*, No. 4:14-cv-130, 2018 WL 2943445, at *18 (E.D. Va. June 11, 2018) (citation omitted), the Court is empowered under Fed. R. Civ. P. 56(e) to consider a fact undisputed when a non-movant fails to properly address another party's assertion of fact as the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 56; *Liberty Ins. Corp. v. TLB*, 433 F. Supp. 3d 902, 907 (E.D. Va. 2020) ("If a party fails to address the other party's assertion of fact, the Court may 'consider the fact undisputed for purposes of the motion.'") (quoting Fed. R. Civ. P 56(e)(2)). In particular, where Plaintiff simply responds to a specific Statement of Facts with the word "Disputed" and a citation to sections of his Statement of Additional Facts that entirely fail to address the facts Defendant set forth in that paragraph, the Court will view those facts as undisputed. Simply stated, it is not the duty of the Court to wander in the dark looking for any facts to illuminate Plaintiff's theoretical bases for relief. *See* Dkt. 51, 2-20 (disputing but failing to address any part of Plaintiff's Statement of Facts ¶¶ 6, 13-18, 22-24, 26).

### A.  Plaintiff's Hostile Work Environment Claim

Plaintiff's Title VII claim for a hostile work environment cannot proceed beyond the summary judgment stage. For his Title VII hostile work environment claim to survive summary

judgment, Plaintiff must demonstrate that a reasonable jury could find that the alleged conduct by his supervisor: (1) was unwelcome; (2) was based on his gender; (3) was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive work environment; and (4) was imputable to his employer.  *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 495–96 (4th Cir. 2015); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc).  In other words, a *prima facie* hostile work environment claim is proved when a plaintiff shows "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation and internal quotation marks omitted).  It follows that hostile work environment claims are therefore "based on the cumulative effect of individual acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

In support of its motion for summary judgment, Defendant contends that the record provides insufficient evidence to preclude summary judgment on Plaintiff's hostile work environment claim.  *See* Dkt. Nos. 46; 57.  According to Defendant, summary judgment is proper because the alleged conduct Plaintiff endured was not based on Plaintiff's gender, was not objectively severe or pervasive, and Plaintiff has not established he subjectively believed he was subject to a hostile environment.  Moreover, Defendant argues that liability cannot be imputed to the City because Plaintiff failed to avail himself of the City's harassment policy and procedures. *See* Dkt. 46, 14.

Though Defendant appears to concede that Plaintiff perceived at least some of Diez's conduct as subjectively unwelcome (*see id.* at 18), the Court views these facts in the light most favorable to Plaintiff and thus concludes that Plaintiff has adduced sufficient evidence such that a

reasonable juror could conclude Plaintiff believed Diez's behavior was unwelcome.  For example, it is undisputed that Plaintiff testified Diez's discussion of her former romantic relationship made him feel "weird."  *See* Dkt. Nos. 46, 15; 57-2, 9.  And Plaintiff placed a mirror on his desk so he could see when Diez was approaching.  *See* Dkt. 57-2, 12.  The Court will accordingly address the remaining elements of Plaintiff's hostile work environment claim in turn.

### *i. Conduct based on Gender*

As part of his *prima facie* case for workplace harassment, Plaintiff must satisfy one of three tests to show that the conduct he alleges was based on his gender.  He may either put forward "(1) evidence that the behavior amounted to earnest sexual solicitation; (2) [make] a showing that the alleged harasser has general hostility toward people of that gender in the workplace; or (3) [provide] direct comparative evidence of treatment of men versus women."  *Atkins v. Computer Scis. Corp.*, 264 F. Supp. 2d 404, 410 (E.D. Va. 2003) (internal quotations omitted) (citing *Lack v. Wal–Mart Stores, Inc.*, 240 F.3d 255 (4th Cir. 2001)).  Plaintiff does not allege that his supervisor harbored a general hostility toward men in the workplace; and the summary judgment record is devoid of any direct comparative evidence regarding how Diez treated men compared to women in a general sense.  *See* Dkt. 46, 24.  The only remaining methodology that is available to Plaintiff to prove that the alleged harassment was based on his gender, then, is by providing evidence that Diez's behavior "amounted to earnest sexual solicitation."  *Lack*, 240 F.3d at 261.

Yet, Plaintiff also fails to demonstrate sufficient evidence of earnest sexual solicitation.  As this Court has made clear, "sexually tinged comments and teasing" without any evidence that the plaintiff was propositioned are insufficient to qualify as earnest sexual solicitation.  *See English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 845 (E.D. Va. 2002).

In *English*, this Court granted summary judgment in the employer's favor because the

plaintiff could not provide any evidence that he had been propositioned.  190 F. Supp. 2d 833, 845 (E.D. Va. 2002).  In that case, the alleged harasser's instances of unwelcome touching, combined with comments of a lewd nature, were also insufficient to raise an inference that the behavior, in the aggregate, amounted to sexual propositioning.  *See id.*  Furthermore, the Fourth Circuit has held that sexual overtures, including physical gestures and lewd commentary, are insufficient to create an inference of earnest sexual solicitation when those acts are unaccompanied by the initiating or propositioning of sex.  *See Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001).

In this case, Plaintiff pleads that Diez frequently wanted to find time with him alone, *see* Dkt. 51, 6-7, but there is no indication that she ever directly propositioned him.  Neither does the record contain any evidence that Diez solicited sexual favors from Plaintiff.  And in light of *English*, 90 F. Supp. 2d at 845, and *Lack*, 240 F.3d at 261, neither are the alleged instances of Diez allegedly brushing against Plaintiff or touching his arm sufficient to create an inference of earnest sexual solicitation. Dkt. 51, 5.  In making his case for a hostile work environment, Plaintiff "cannot rely on the sex-specific nature" of Diez's alleged incendiary comments "without producing plausible evidence that such comments were animated by [Diez's] hostility to [Plaintiff] as a man." *Lack*, 240 F.3d at 261.  To be sure, the alleged behavior presents as boorish, ill-mannered, and provocative.  However, viewed in the light most favorable to Plaintiff, and in light of controlling authority, this evidence is nonetheless insufficient to support the "earnest sexual solicitation" theory.

### ii. Severity or Pervasiveness

Even if Plaintiff could demonstrate that Diez's conduct was based on his gender, however, his *prima facie* case faces another hurdle.  In hostile work environment claims, employees "must

clear a high bar in order to satisfy the severe or pervasive test." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  Not all inadvisable or unprofessional workplace conduct is sanctionable under Title VII.  *Id.*  That is why the Court at summary judgment must "identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion." *Id.* at 316.  When analyzing whether conduct qualifies as severe or pervasive, courts undertake an inquiry that relies on the totality of the circumstances, including the alleged conduct's (1) frequency; (2) severity; (3) whether the actions were physically threatening or humiliating; and (4) whether the conduct unreasonably interfered with the employee's work performance.  *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (per curiam).  To make his *prima facie* case for a hostile workplace environment, Plaintiff must establish "that the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (quoting *Jennings v. U.N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc)).

Plaintiff alleges several instances of Diez's inappropriate conduct, but Plaintiff's harassment claim does not rise to the level of severe and pervasive.  Indeed, there is no indication that the actions alleged in this case were physically threatening.  And Plaintiff has not demonstrated that the harassment unreasonably interfered with the daily performance of his work obligations.  As the Court has noted, *see supra* at 11, Plaintiff does not allege that Diez directly propositioned him, solicited him for a sexual relationship, or asked him for sexual favors.  Plaintiff does, however, allege that Diez contacted him on a daily basis and sometimes communicated with him after business hours on his work-issued cell phone; often posed "a series of inappropriate questions [to Plaintiff] about his personal life," such as Plaintiff's dating life and weekend plans; discussed

sexual encounters she had with other employees; and regularly touched Plaintiff without his consent.  *See* Dkt. 51, 4-7.  While these actions may have been obnoxious and even offensive, there is not sufficient evidence in the record to conclude that Diez's conduct altered the conditions of Plaintiff's employment or created an abusive work environment.

Though Plaintiff set out these and various other allegations of repeated unwanted and provocative conduct directed at him in his Amended Complaint, at summary judgment, the Court must determine whether the conduct was so severe or pervasive that a reasonable juror could find that his *prima facie* case meets the "high bar" for establishing a hostile work environment.  *See Sunbelt Rentals, Inc.*, 521 F.3d at 315.  The Court finds that Plaintiff has failed to satisfy this demanding standard and thus dispenses with the remaining burden-shifting stages under *McDonnell Douglas*.  For this additional reason, Defendant is entitled to summary judgment on Plaintiff's hostile work environment claim.[1]

### B. Plaintiff's Retaliation Claim

Plaintiff's remaining Title VII claim is based in alleged retaliation.  Unlike his hostile work environment claim, this claim survives summary judgment because Plaintiff has presented evidence that is sufficient for a reasonable jury to find that his protected activity was the cause of his termination by the City.

To establish a *prima facie* case of retaliation, Plaintiff must prove three elements: that (1) he engaged in protected activity; (2) his employer took materially adverse action against him; and (3) the two events were causally linked.  *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271

---

[1] The City also invokes the affirmative defense set out in the Supreme Court's opinions in *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Indus. v. Ellerth*, 542 U.S. 742 (1998).  *See* Dkt. 46 at 24-26.  As the City is entitled to summary judgment on separate grounds because there is no actionable hostile work environment claim under Title VII, the Court declines to address this argument.

(4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). Under the *McDonnell Douglas* burden-shifting framework, if the plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory justification for the materially adverse action. *Navy Fed. Credit Union*, 424 F.3d at 405. If the defendant meets this burden, the burden then shifts back to the plaintiff, who must demonstrate that the defendant's stated reason is pretextual. *Id.*

### 1. Plaintiff's *Prima Facie* Showing of Retaliation

Termination is unquestionably a materially adverse action, a fact the governing case law makes clear. *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A materially adverse change might be indicated by a termination of employment.") (citation omitted); *Strothers v. Laurel*, 895 F.3d 317, 328 (4th Cir. 2018) ("[I]t is patently obvious and undisputed that termination is a materially adverse action."). The record is clear that Plaintiff's employment with the City ended with the termination of his employment on January 25, 2019. *See* Dkt. 57-2, 41. The Court therefore focuses its analysis on the first and third elements: whether Plaintiff engaged in a protected activity and whether there is a causal link between that activity and his termination.

### i. Protected Activity

Plaintiff raises at least two instances of protected activities. In retaliation claims, an employee's action may qualify as a protected activity under either of two categories: opposition and participation. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). Both of Plaintiff's potential protected activities fall within the opposition analytical foundation. First, Plaintiff sets forth that on December 12, 2018, Bell complained on Plaintiff's behalf, and that this grievance should be construed as a protected activity within the meaning of Title VII's

oppositional clause.  *See* Dkt. 51 at 26.  Second, he maintains that his own complaint to Mason on January 9, 2019, was a protected activity.  *Id.* at 25-26.

Plaintiff's first argument related to alleged protected activity relies on a "zone of interest" theory that the Supreme Court first identified in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).  In that opinion, the Court recognized a "person aggrieved" enjoys a limited right to sue under Title VII when he is injured by his employer's adverse action against a fellow employee with whom the plaintiff is closely associated, even though that other person is the intended target of the employer's adverse action.  *See id.*  In *Thompson*, "injuring [the plaintiff] was the employer's intended means of harming [his fiancé].  Hurting him was the unlawful act by which the employer punished her."  *Id.*

Yet, in this case, Plaintiff does not allege he was harmed by a materially adverse action taken against his girlfriend, Bell.  Rather, Plaintiff exclusively alleges a materially adverse action by the City against *him*, and Bell is not a party to this action.  Plaintiff invokes *Thompson*'s zone of interest theory to assert what seems to be a third-party complainant theory.  He does so by theorizing that the December 12, 2018 grievance Bell purportedly raised on his behalf was effectively his own.  This Court does not read *Thompson* to so broadly expand the definition of protected action in third-party retaliation suits.

The Court does not agree with Plaintiff's interpretation of *Thompson*.  And even if it did, Plaintiff's "zone of interest" argument fails for a second, independent reason: Interestingly, Plaintiff advances this theory for the first time at summary judgment.  Though a late advancement of this perspective is not reason to disregard the argument, as "a plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment," *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154 (4th Cir. 2020), neither does it "mean that a plaintiff may

plead one theory and one set of facts in his complaint, and then proceed to trial on an entirely different theory supported by entirely different facts." *Id.* This Court, in its discretion, will not allow this *de facto* change of course. Plaintiff's new theory rests on facts that are not in his Amended Complaint, and permitting this eleventh-hour revision risks prejudicing Defendant because the City did not have a full opportunity to gather facts about Plaintiff's new theory during discovery. *See id.*; *see also Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013) (holding that "constructive amendment of the complaint at summary judgment undermines the complaint's purpose and can thus unfairly prejudice the defendant").

Still, Plaintiff presents an alternative theory of protected activity. Plaintiff's other theory of engaging in protected activity is that his own complaint to Steve Mason about the alleged retaliatory conduct by Diez qualifies under Title VII. *See* Dkt. 51 at 25-26. On this score, the Court finds Plaintiff's argument availing. It is well-established that protected activity may be informal in nature, including complaints to superiors outside of any formal grievance process. *See, e.g.*, *Smith v. Virginia Hous. Dev. Auth.*, 437 F. Supp. 3d 486, 512 (E.D. Va. 2020) ("[P]rotected oppositional activities may include staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities . . . as well as complaint[s] . . . about suspected violations.") (quoting *Navy Fed. Credit Union*, 424 F.3d at 406); *Perry v. Kappos*, 776 F. Supp. 2d 182, 194 (E.D. Va. 2011) ("Plaintiff admittedly made only an internal, informal complaint, which, in this Circuit, is opposition activity."), *aff'd*, 489 F. App'x 637 (4th Cir. 2012). As the City points out, Plaintiff in this case first complained about Diez's alleged behavior *after* he received a notice of his potential termination. But that relates to the ultimate question of causation; it does not necessarily follow that his January 9, 2019 complaint loses its status as a protected activity. *See Jones v. Virginia Commonwealth Univ.*, No. 3:20-cv-792, 2021 WL 51542,

at *8 (E.D. Va. Jan. 6, 2021) (finding at motion to dismiss stage that a conversation about a memorandum notifying employee of supervisor's intent to terminate her employment was a "protected activity," although the conversation occurred the same day the employee received that memorandum).

The parties dispute the precise contents of Plaintiff's January 9, 2019 complaint about Ms. Diez and which inferences may be drawn from that complaint, but this much seems clear. First, Plaintiff exercised his right to an administrative review after being notified that his supervisor had recommended his termination. *See* Dkt. 58-5 at 10 (DiRenzo Dep.) ("He was given the right to an administrative review, and he exercised that right."). Second, Plaintiff reportedly conveyed to the City's human resources staff that after Diez learned he was dating Bell, "suddenly [Diez] was very different in creating problems in their work relationship[.]" *See id.* at 16 ("I do recall him stating that, but he didn't make allegations of anything. He – again, he was – it came across as he stating a fact. She knows me and Ms. Bell are dating. Now she's different."). And third, Plaintiff brought documentation to that meeting, which he presumably believed to support his cause. *See id.* at 13. ("I do recall that he had documents with him[.]"). Whether Plaintiff's complaint was merely a last-minute attempt to save his job, as Defendant maintains, or was instead a legitimate complaint raising suspected employment law violations, as Plaintiff alleges, is a genuine dispute of material fact. What is beyond doubt is that Plaintiff leveled a complaint with the City's designated human resources officer on January 9, 2019, and that this complaint is sufficient to preclude summary judgment on the issue of whether Plaintiff engaged in a protected activity in his retaliation claim against the City under Title VII.

### iii. Causation

The Court next addresses the third element of Plaintiff's *prima facie* retaliation claim—causation.   For this element, the probative question is whether Plaintiff has adequately demonstrated that his engagement in protected activity caused his firing.

Demonstrating a causal relationship between a protected activity and retaliation "is not an onerous burden" at the *prima facie* stage.  *See Strothers*, 895 F.3d 317, 335 (4th Cir. 2018) (citing *Foster*, 787 F.3d at 251); *see also Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012).  The Fourth Circuit has clarified that the Supreme Court's opinion regarding but-for causation in retaliation cases in *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338 (2013), does not import the but-for causation standard into the *prima facie* stage.  *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 251 (4th Cir. 2015) (holding that *Nassar* does not have "any bearing on the causation prong of the prima facie case").  This means that "[p]urported victims of retaliation do not have to show at the *prima facie* stage that their protected activities were but-for causes of the adverse action."  *Strothers*, 895 F.3d at 335 (4th Cir. 2018).

In this case, Plaintiff has shown at the summary judgment stage sufficient facts to support a causal connection between his complaint about Diez's harassment and his termination by the City.  Short of any additional causation evidence Plaintiff may be able to muster, the temporal proximity between his protected activity and the materially adverse action is "sufficient to make an initial *prima facie* showing of causation."  *See Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015); *see also Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) ("While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a *prima facie* case of causality.'") (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).  Plaintiff

complained about Diez to the City's human resources officer on January 9, 2019, and received notice on January 23, 2019—fourteen days later—that his employment would be terminated on January 25, 2019. Dkt. 51-41. If, as the Fourth Circuit has held and this Court has noted, a ten-week gap between a complaint and a materially adverse action is sufficient to give rise to an initial inference of causation at the *prima facie* stage, a fourteen-day gap also clears that hurdle. *Emami v. Bolden*, 241 F. Supp. 3d 673, 681 (E.D. Va. 2017) ("A ten-week time period can be sufficient to establish a prima facie case of retaliation.") (citing *Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006)).

Having established that he participated in a protected activity and that there is a causal link between that activity and his termination, Plaintiff therefore makes a *prima facie* showing of retaliation under Title VII.

### 2. Defendant's Burden of Production

The Court next turns to whether Defendant has met its burden of production under the *McDonnell Douglas* framework for retaliation claims. After a Title VII plaintiff makes out a *prima facie* case of retaliation, the burden then shifts to the defendant to provide a legitimate, non-retaliatory justification for the materially adverse action. *Navy Fed. Credit Union*, 424 F.3d at 405. The City has done so here. Defendant identifies Plaintiff's failure to comply with City policy regarding use of a parking placard and inaccurate time entry as justifications for his termination, *see* Dkt. 46, 30, the same rationales the City documented when it informed Plaintiff that he had been recommended for termination. *See* Dkt Nos. 51-37; 51-47, 13. These justifications are sufficient to rebut the presumption created by Plaintiff's *prima facie* showing of retaliation, and Defendant therefore carries its burden at this stage under *McDonnell Douglas*. *See King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

19

### 3. Plaintiff's Burden of Persuasion

Because the City has carried its burden of articulating a non-retaliatory reason for the materially adverse action, the burden of persuasion shifts back to Plaintiff to show that the employer's reason was pretextual to disguise the true retaliatory reason for his termination.  A plaintiff may rebut a defendant's nonretaliatory reason and demonstrate pretext by showing "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).  An employee must establish "both that the [employer's] reason was false and that [retaliation] was the real reason for the challenged conduct." *Foster*, 787 F.3d at 252 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  And a plaintiff that demonstrates "retaliation was the real reason for the [adverse employment action]," *Holland*, 487 F.3d at 218, "will necessarily be able 'to show that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct[.]'" *Foster*, 787 F.3d at 252 (quoting *Nassar*, 570 U.S. at 346-47).

Relevant to Plaintiff's case that his termination for failure to comply with City policies was pretextual is the fact that the City did not investigate Diez's claims that Plaintiff had violated City policy before he was recommended for termination.  According to DiRenzo, there was no investigation into Diez's claims because DiRenzo "trust[s] that at her level, the information [Diez] is providing to me is true." Dkt. 58-5, 15.  Neither was there an investigation conducted following Price's administrative review on January 9, 2019, when he complained to the City's human resources officer about Diez's conduct. *Id.* at 19.  And though Price was a probationary employee, Defendant does not argue that it did not investigate claims of those employees' wrongdoing as a

20

matter of course.  The City apparently conducts investigations upon the recommendation of a department head or if Human Resources determines an event is "serious and it involves more than a single individual or a single incident."  *Id.* at 17.  And the record shows that just a few months after Plaintiff was terminated, the City investigated separate alleged misconduct by Diez.  *See* Dkt. 51-38.  Following that investigation, Diez retained her job and did not receive any discipline.  *See id.* at 3.  A reasonable juror could conclude that the lack of any investigation in Plaintiff's case is probative evidence of pretext.  In *Taylor v. Donahoe*, 66 F. Supp. 3d 993, 1005 (W.D. Tenn. 2014), for example, the court denied summary judgment to an employer in the "unique" case where the official who signed the plaintiff employee's termination letter "admittedly conducted no investigation and instead rubber-stamped a decision actually made by" the employee's supervisor. *Id.*  (observing that there was "no independent investigation" into the employee's alleged misconduct).[2]

As a matter of law, the protected activity must occur prior to the alleged retaliatory conduct. *See, e.g.*, *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity.").  This means that at trial, Plaintiff must put forward evidence of retaliation that followed his protected activity on January 9, 2019.  But at the summary judgment stage, Plaintiff must present sufficient evidence such that a reasonable juror could find that a desire to retaliate, rather than his alleged violations of City policy, was the but-for cause of his termination.

---

[2] A reasonable factfinder could also consider an additional undisputed fact supporting Plaintiff's argument that his termination was pretextual: he obtained the parking placard he purportedly misused from Danyell Jones, a subordinate City employee who has never been reprimanded by the City for issuing Price that parking placard.  *See* Dkt. Nos. 51, 9; 57-2, 19.

*Foster*, 787 F.3d at 252.  Having reviewed the record, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that a reasonable juror could conclude that the City's proffered justifications were not its real reasons for firing Plaintiff, and that the actual reason for the Plaintiff's termination was his complaint about Diez.  *See id.* at 254.  The Court will therefore deny Defendant's motion for summary judgment on the Plaintiff's retaliation claim.  This result is consistent with an outcome the Fourth Circuit contemplated when it observed that:

> a jury would be entitled to simultaneously reject the hostile work environment claims on the ground that [a manager's] conduct was not sufficiently serious to amount to a hostile environment, but award relief on the retaliation claims by finding that [the manager's] conduct was severe enough to give [plaintiff] a reasonable belief that a hostile environment, although not fully formed, was in progress.

*Boyer-Liberto*, 786 F.3d at 285 (reversing and remanding grant of summary judgment to defendant in Title VII case).

## IV.   CONCLUSION

For the reasons set forth above, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. 45) is GRANTED in part and DENIED in part.

It is SO ORDERED.

Alexandria, Virginia
February 9, 2021

/s/

Rossie D. Alston, Jr.
United States District Judge

22